IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

NO. 15-12731-GG
_____

LARRY KLAYMAN,

Plaintiff/Appellant,

vs.

VOICE MEDIA GROUP, INC., *ET AL.*,

Defendants/Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

_____

APPELLEES' RESPONSE BRIEF
_____

SANFORD L. BOHRER
SCOTT D. PONCE
BRIAN W. TOTH
Holland & Knight LLP
701 Brickell Avenue
Suite 3300
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

Attorneys for Appellees

<u>CERTIFICATE OF INTERESTED PERSONS</u>
<u>AND CORPORATE DISCLOSURE STATEMENT</u>

Appellees, pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-1, identify the following people and entities as having an interest in the outcome of this appeal:

Ken Avidor

Sanford L. Bohrer

United States District Judge Anne C. Conway

Matthew Hendley

Holland & Knight LLP

Larry Klayman

United States Magistrate Judge Philip R. Lammens

Scott D. Ponce

Aaron Rupar

Brian W. Toth

Voice Media Group, Inc., a Colorado corporation

    Lancero Associates, LLC, an Arizona limited liability company (Dallas Observer, Houston Press, LA Weekly, and OC Weekly also owned by Lancero Associates, LLC, an Arizona limited liability company)

    New Times Media, LLC, a Delaware limited liability company

        City Pages, LLC, a Delaware limited liability company

i

Denver Westword, LLC, a Delaware limited liability company

Miami New Times, LLC, a Delaware limited liability company

New Times, BPB, LLC, a Delaware limited liability company

Phoenix New Times, LLC, a Delaware limited liability company

Riverfront Times, LLC, a Delaware limited liability company

Village Voice, LLC, a Delaware Limited Liability Company

Dallas Observer, LP, a Texas limited partnership

Houston Press, LP, a Texas limited partnership

LA Weekly, LP, a Delaware limited partnership

OC Weekly, LP, a Delaware limited partnership

Each corporate Appellee further certifies that there is no publicly held corporation that owns 10% or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not request oral argument.

<u>TABLE OF CONTENTS</u>

<u>Page</u>

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS............................................................................iv

TABLE OF AUTHORITIES ...................................................................vi

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE................................................................2

SUMMARY OF THE ARGUMENT ...................................................16

ARGUMENT ......................................................................................19

     I.    THE DISTRICT COURT WAS CORRECT IN

           GRANTING APPELLEES' MOTION FOR SUMMARY

           JUDGMENT ....................................................................19

     II.    THE DISTRICT COURT DID NOT ABUSE ITS

           DISCRETION IN DENYING APPELLANT'S UNTIMELY

           MOTIONS TO AMEND HIS THIRD AMENDED

           COMPLAINT TO ADD A CLAIM FOR PUNITIVE

           DAMAGES .......................................................................43

III.    THE DISTRICT COURT DID NOT ABUSE ITS

DISCRETION IN DENYING APPELLANT'S MOTION

FOR RECUSAL ...................................................................48

CONCLUSION .....................................................................51

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................52

CERTIFICATE OF SERVICE .............................................................52

## TABLE OF AUTHORITIES

Page

### FEDERAL DECISIONS

*Access Now, Inc. v. Southwest Airlines Co.*,

 385 F.3d 1324 (11th Cir. 2004) .................................................... 20, 22, 35, passim

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).................. 25, 26, 27, passim

*Battle v. Board of Regents for Georgia*, 468 F.3d 755 (11th Cir. 2006) ................16

*Christo v. Padgett*, 223 F.3d 1324 (11th Cir. 2000) .........................................16, 50

*Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000) .................................45

*Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967)................................................31

*Danwala v. Houston Lighting & Power Co.*, 14 F.3d 251 (5th Cir. 1993) .............24

*Davis v. Costa-Gavras*, 654 F.Supp. 653 (S.D.N.Y. 1987)....................................33

*Garrison v. State of Louisiana*, 379 U.S. 64 (1964) ................................................23

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)......................... 23, 31, 36, passim

*Hall v. United Insurance Co. of America*, 367 F.3d 1255 (11th Cir. 2004)............16

*Hamm v. Board of Regents*, 708 F.2d 647 (11th Cir. 1983) ...................................50

*Hunt v. Liberty Lobby*, 720 F.2d 631 (11th Cir. 1983)...........................................24

*In re: Club Associates*, 956 F.2d 1065 (11th Cir. 1992)....................................35, 42

*In re: Walker*, 552 F.3d 1304 (11th Cir. 2008)......................................................50

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992)..................46

vi

*Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230 (11th Cir. 1999) ......................31

*Liteky v. United States*, 510 U.S. 540 (1994)............................................................50

*Little v. T-Mobile USA, Inc.*, 691 F.3d 1302 (11th Cir. 2012)...........................21, 22

*Long v. Arcell*, 618 F.2d 1145 (5th Cir. 1980) .......................................................24

*Marcone v. Penthouse International Magazine for Men*,

 754 F.2d 1072 (3d Cir. 1985).................................................................................38

*McFarlane v. Sheridan Square Press*, 91 F.3d 1501 (D.C. Cir. 1996) ..................33

*Mesa Air Group, Inc. v. Delta Air Lines, Inc.*,

 573 F.3d 1124 (11th Cir. 2009) .......................................................................20, 22

*Neill v. Gulf Stream Coach, Inc.*, 966 F.Supp. 1149 (M.D. Fla. 1997)..................45

*New York Times Co. v. Connor*, 365 F.2d 567 (5th Cir. 1966) ..............................29

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)................. 24, 25, 26, passim

*Secord v. Cockburn*, 747 F.Supp. 779 (D.D.C. 1990) ............................................33

*Smith v. School Board of Orange County*, 487 F.3d 1361 (11th Cir. 2007) ..........44

*Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417 (11th Cir. 1998) .......................45, 46

*St. Amant v. Thompson*, 390 U.S. 727 (1968)..........................................................31

*Straw v. Chase Revel, Inc.*, 813 F.2d 356 (11th Cir. 1987) ....................................47

*Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987)...............................................30

*Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306 (11th Cir. 2002) ............50

*United States v. Coy*, 19 F.3d 629 (11th Cir. 1994).................................................21

## STATE DECISIONS

*Mile Marker, Inc. v. Petersen Publishing, LLC*,

 811 So.2d 841 (Fla. 4th DCA 2002).......................................................23

*Palm Beach Newspapers, Inc. v. Early*, 334 So.2d 50 (Fla. 4th DCA 1976)..........23

*Rapp v. Jews for Jesus, Inc.*, 997 So.2d 1098 (Fla. 2008)............................23, 41, 42

*Zorc v. Jordan*, 765 So.2d 768 (Fla. 4th DCA 2000) ..............................................23

## FEDERAL STATUTES

28 U.S.C. §1291.........................................................................................1

28 U.S.C. §1332(a)(1).................................................................................1

28 U.S.C. §144........................................................................................15, 48

28 U.S.C. §455........................................................................................15, 48

## FEDERAL RULES OF CIVIL PROCEDURE

Fed.R.Civ.P. 15 .......................................................................................45

Fed.R.Civ.P. 16 ........................................................... 14, 18, 44, passim

Fed.R.Civ.P. 34(b)(2)(A) .........................................................................46

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. §1332(a)(1) because Appellant's citizenship was different than the citizenship of every Appellee at the time Appellant filed his initial complaint.

This Court has jurisdiction over the appeal under 28 U.S.C. §1291.

The district court entered its final judgment on April 3, 2015 (ECF No. 125). Appellant filed his motion for reconsideration on May 1, 2015 (ECF No. 133). That motion was denied on June 9, 2015 (ECF No. 142). The notice of appeal was filed on June 15, 2015 (ECF No. 144)

The appeal is from the district court's entry of final judgment in favor of Appellees.

## STATEMENT OF THE ISSUES

1.     Whether the district court erred in granting Appellees' motion for summary judgment.

2.     Whether the district court abused its discretion in denying Appellant's untimely motions to amend his third amended complaint to add a punitive damages claim.

3.     Whether the district court abused its discretion in denying Appellant's motion to recuse the district judge.

1

# STATEMENT OF THE CASE

## Nature Of The Case

This was a civil action for defamation and defamation by implication in which Appellant admitted he was a public figure for the purposes of the application of the First Amendment to his claims.

## Course Of The Proceedings And Disposition Below

Appellant's six-count third amended complaint purported to state claims against Appellees for defamation and defamation by implication (ECF No. 52). After the district court's deadline to amend the pleadings passed, Appellant twice moved to file a further amended complaint to seek punitive damages (ECF Nos. 67 & 106). Each motion was denied (ECF Nos. 70 & 110).

Appellees moved for the entry of summary judgment in their favor, and against Appellant, with respect to each count of the third amended complaint (ECF Nos. 94 & 95). The district court granted the motion and entered final judgment in favor of Appellees (ECF Nos. 124 & 125).

After the entry of final judgment, Appellant filed a motion for reconsideration of the order granting Appellees' motion for summary judgment (ECF No. 133). He also filed a motion seeking the recusal of the district judge (ECF No. 139). The district court first denied the motion for disqualification and then, one day later, denied the motion for reconsideration (ECF Nos. 141 & 142). Appellant filed his

notice of appeal six days after his motion for reconsideration was denied (ECF No. 144).

## Statement Of The Facts

### *The Custody and Support Proceedings in Ohio*

During the course of child custody and support proceedings in Ohio between Appellant and his former spouse, the presiding magistrate entered an order detailing, among other things, allegations that Appellant inappropriately touched his son's genitals; allegations that Appellant had his daughter wash his genitals; allegations that Appellant kissed his son "all over" while the boy was in the bathtub and that Appellant "played with [the boy's] privates;" the children's pediatrician contacted a child welfare agency to report allegations of sexual abuse; allegations that one of Appellant's female friends took Appellant's nine year old daughter to a lingerie store and purchased thong underwear for the daughter, which Appellant encouraged his daughter to wear; Appellant's complete lack of credibility; and state and federal judges' findings that Appellant has acted with complete disregard for the judicial process (ECF No. 95-2, pp. 13-15, 21-24, 77-78, 85-87).

The magistrate's order also noted Appellant's responses and defenses to those allegations, which included Appellant's arguments that he passed a polygraph examination, that a social worker's determination that sexual abuse was "indicated" was subsequently changed to "unsubstantiated," and that the district attorney did not

present a case to the grand jury (*Id.*, pp. 17-21). The magistrate explained why he was not persuaded by any of those arguments (*Id.*). The magistrate also found that Appellant's former spouse did not fabricate the allegation that Appellant touched his son's genitals, and that Appellant's son "uttered the words" on his own (*Id.*, p. 89).

Appellant submitted objections to the magistrate's order, and the trial judge rejected Appellant's objections and adopted the magistrate's order without modification (ECF No. 95-5).

Appellant appealed, and the appellate court affirmed in all respects (ECF No. 95-6). In affirming the portion of the magistrate's order relating to Appellant's contact and conduct with his children, the appellate court wrote:

> **{¶23}** In his third assignment of error, Klayman argues that the magistrate's finding that he engaged in inappropriate touching of his child was against the manifest weight of the evidence.

> **{¶24}** A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers* v. *Garson,* 66 Ohio St.3d 610, 614 N.E.2d 742 (1993). Where the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court. *See Seasons Coal Co.* v. *Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *Cohen* v. *Lamko, Inc.,* 10 Ohio St.3d 167, 462 N.E.2d 407 (1984).

> **{¶25}** The issues raised by Klayman involve credibility assessments made by the magistrate. Klayman challenges these findings. The

4

magistrate heard evidence from the children's pediatrician who reported allegations of sexual abuse to children services, and from a social worker at children services who found that sexual abuse was "indicated." Although the social worker's finding was later changed to "unsubstantiated" when Klayman appealed, the magistrate explained that the supervisor who changed the social worker's finding did not testify. The magistrate pointed out that he was obligated to make his own independent analysis based upon the parties and the evidence before him. In doing so, the magistrate found

> on more than one occasion [Klayman] act[ed] in a grossly inappropriate manner with the children. His conduct may not have been sexual in the sense that he intended to or did derive any sexual pleasure from it or that he intended his children would. That, however, does not mean that he did not engage in those acts or that his behavior was proper.

{¶26}  The magistrate further found it significant that although Klayman denied any allegations of sexual abuse, he never denied that he did not engage in inappropriate behavior with the children. The magistrate further found it notable that Klayman, "for all his breast beating about his innocence * * * [he] scrupulously avoided being questioned by anyone from [children services] or from the Sheriffs Department about the allegations," and that he refused to answer any questions, repeatedly invoking his Fifth Amendment rights, about whether he inappropriately touched the children. "Even more disturbing" to the magistrate was the fact that Klayman would not even answer the simple question regarding what he thought inappropriate touching was. The magistrate stated that he could draw an adverse inference from Klayman's decision not to testify to these matters because it was a civil proceeding, not criminal.

{¶27}  After reviewing the record, we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children.

{¶28}  Klayman's third assignment of error is overruled.

(*Id.*).

5

The Ohio Supreme Court declined to accept jurisdiction over Appellant's attempt to further appeal (ECF No. 95-7).

### *The Florida Bar Disciplinary Proceedings*

Appellant was the subject of disciplinary proceedings by the Florida Bar. According to the Report of Referee, a former client filed a grievance with the Florida Bar "alleging that [Appellant] had had (sic) failed to provide services in her criminal case after she paid him a $25,000 retainer" (ECF No. 95-8, p. 2). Appellant and the former client entered The Florida Bar Grievance Mediation Program, which resulted in a settlement agreement through which Appellant agreed to pay the former client $5,000 to resolve the grievance (*Id.*, pp. 2-3).

Appellant violated the agreement by failing to make full payment, which resulted in the opening of additional disciplinary proceedings relating to Appellant's violation of the settlement agreement (*Id.*, pp. 3-6). After the Florida Bar made a probable cause determination and filed a formal complaint with the Florida Supreme Court, Appellant paid the balance owed under the settlement agreement (*Id.*, pp. 5-6). The referee thereafter recommended that Appellant be found guilty of various ethics violations, and accepted Appellant's "Unconditional Guilty Plea and Consent Judgment for Discipline" (*Id.*, pp. 6-7).

The Florida Supreme Court approved the "uncontested referee's report" and reprimanded Appellant for ethics violations (ECF No. 95-9).

6

*The Three Publications At Issue*

On September 28, 2012, a post entitled "Bradlee Dean's Attorney, Larry Klayman, Allegedly Sexually Abused His Own Children," written by Appellee Aaron Rupar, was published on the Internet website of the *City Pages* newspaper (the "September 28 Article") (ECF No. 52-1; ECF No. 95-10, p.58, l.17 – p.59, l.16, p.60, l.15 – p.61, l.2).  The September 28 Article quotes the *entirety* of the portion of the Ohio appellate court's opinion relating to touching, including the court's statement: "After reviewing the record, we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children" (ECF No. 52-1 & 95-6).

The September 28 Article includes the following statement:  "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps" (ECF No. 52-1).  Appellee Rupar relied upon his review and understanding of the Ohio appellate court's opinion in writing the September 28 Article and that statement (ECF No. 95-10, p.61, l.25 – p.62, l.16).  Rupar used the word "criminal" because he understood the conduct described in the appellate court's opinion – an adult "inappropriately touch[ing]" children – to be criminal behavior (*Id.*, p.74, l.20 – p.76, l.20; p.78, l.4 – p.82, l.5).  Rupar believed that statement was true at the time he wrote and published it (ECF No. 95-11, ¶6).

7

On February 22, 2013, a post entitled "Birther Lawyer Fighting Joe Arpaio Recall Was Found To Have 'Inappropriately Touched' Kids," written by Appellee Matthew Hendley, was published on the Internet website of the *Phoenix New Times* newspaper (the "February 22 Article") (ECF No. 52-2;  ECF No. 95-13, p.98, l.22 – p.99,  l.9, p.104, ll.2-9).   The February 22 Article quotes at length from the Ohio appellate court's opinion, including its statement that, "After reviewing the record, we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children" (ECF No. 52-2; ECF No. 95-13, p.104, l.2 – p.105, l.17 ).

At the time Appellee Hendley wrote and published the statement that a court found that Appellant inappropriately touched his children, Hendley believed the statement was true because that is exactly what the appellate court wrote (ECF No. 95-13, p.104, l.2 – p.105, l.17; ECF No. 95-14, ¶¶2-6).

On June 18, 2013, a post entitled "Larry Klayman Under Investigation By The Arizona Bar," written by Appellee Hendley, was published on the Internet website of the *Phoenix New Times* newspaper (the "June 18 Article") (ECF No. 52-3; ECF No. 95-13, p.71, l.15 – p.72, l.5).   The article reports that "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work" (ECF No. 52-3).

In writing that portion of the June 18 Article, Defendant Hendley reviewed an article that was published in November 2011 (two years earlier) in the *Miami New Times* newspaper, which reported the Florida Bar proceedings and said: "The Florida Bar has issued a public reprimand of Klayman for taking a $25,000 payment to represent a woman in a high-profile criminal case and then allegedly failing to, y'know, do any lawyerin'." (ECF No. 95-13, p.72, ll.6-23, p.75, l.2 – p.76, l.1, p.114, l.11 – p.115, l.17; ECF No. 95-15). Defendant Hendley included in the June 18 Article a link to the *Miami New Times* article (ECF No. 95-14, ¶10).

He also reviewed the filings in the Florida Bar proceedings, which were accessible through a link in the *Miami New Times* article (ECF No. 95-13, p.72, l.6 – p.73, l.7, p.75, l.2 – p.76, l.1, p.83, l.3 – p.84, l.6). Those Florida Bar filings were the Formal Complaint, Consent Judgment, Report of Referee, and Supreme Court Order (ECF Nos. 95-16, 95-17, 95-8, 95-9).

The statement in the June 18 article – "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work" – was a summary of what Hendley drew from the Florida Bar documents and *Miami New Times* article (the latter of which was read by Appellant around the time it was published without complaint from Appellant[1]); Hendley did not intentionally mischaracterize the

---

[1] ECF No. 95-1, p.89, l.24 – p.91, l.20.

Florida Bar documents, and he believed the statement was true at the time he wrote and published it (ECF No. 95-13, p. 78, l.15 – p.79, l.7, p.110, ll.1-22; ECF No. 95-14, ¶¶7-12).

<em>Appellees Avidor and Voice Media Group</em>

Appellee Avidor did not write or publish the September 28, February 22, or June 18 Articles (ECF No. 95-18, p.73, l.20 - p.75, l.6; ECF No. 95-19, ¶¶2-3; ECF No. 95-10, p.58, l.17 – p.59, l.16, p.60, l.15 – p.61, l.2).

Appellee Voice Media Group does not publish any newspapers (ECF No. 95-20, ¶3).

<em>Appellant's Pre-Suit Notice</em>

On November 26, 2013, Appellant sent Appellees notice, pursuant to §770.01, Florida Statutes, specifying the statements that he alleged to be false and defamatory (the "770 Notice") [ECF No. 52-4].  Section 770.01 provides that "[b]efore any civil action is brought for publication . . . in a newspaper . . . of a libel  . . . the plaintiff shall . . . serve notice in writing on the defendant, *specifying* the article or broadcast and *the statements therein which he or she alleges to be false and defamatory*" (emphasis added).

With respect to the <u>September 28</u> Article, the 770 Notice identified only the following statement:  "Turns out, gays aren't the only ones capable of disturbing,

10

criminal sexual behavior -- apparently even conservative straight guys tight with Bradlee Dean can turn out to be total creeps" (the "September 28 Statement").

With respect to the <u>February 22</u> article, the 770 Notice says "the defamatory statements once again falsely infer that I 'inappropriately touched' children . . . ." It is unclear whether that is a reference to the title of the article, "Birther Lawyer Fighting Joe Arpaio Recall Was Found To Have 'Inappropriately Touched' Kids;" or the first sentence of the article: "What are the chances that a lawyer who was found by a court to have 'inappropriately touched' his children would try to stop the recall of a county sheriff whose agency failed to properly investigate more than 400 sex crimes?" (ECF No. 52-2)  Regardless, those statements will be referred to, collectively, as the "February 22 Statement."

With respect to the <u>June 18</u> Article, the 770 Notice says "the defamatory statements represent and/or give the false impression that I was reprimanded "for taking money from a client, and never doing any work."  That is a reference to the following statement from the June 18 Article: "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work" (the "June 18 Statement") (ECF No. 52-3).

### The Third Amended Complaint

Appellant's third amended complaint contained six counts (ECF No. 52).

11

Count I was for defamation against Avidor, Rupar, City Pages, and Voice Media Group arising from the September 28 Statement.

Count II was for defamation against Hendley, Phoenix New Times, and Voice Media Group arising from the February 22 Statement.

Count III was for defamation arising from the June 18 Statement and, despite its title, is against Hendley, Phoenix New Times, and Voice Media Group.[2]

Count IV was for defamation by implication against Avidor, Rupar, City Pages, and Voice Media Group arising from the September 28 Statement.

Count V was for defamation by implication against Hendley, Phoenix New Times, and Voice Media Group arising from the February 22 Statement.

Count VI was for defamation by implication against Hendley, Phoenix New Times, and Voice Media Group arising from the June 18 Statement.

*Appellant Is Twice Denied Leave To File A Fourth Amended Complaint*

Appellant's third amended complaint, like all the complaints before it, stated that "[a]t a later time (sic) appropriate time, a prayer for punitive damages will also be plead" (ECF No. 1, p.11; ECF No. 14, p.13; ECF No. 39, p.19).

The district court's case management and scheduling order set December 12, 2013 as the deadline for amending the pleadings (ECF No. 36).  At no time prior to

---

[2] The title of Count III said it was against Avidor, Rupar, and City Pages, but that ostensibly was an error because none of those Appellees wrote or published the June 18 Article (ECF No. 52-3).

that deadline did Appellant seek leave to file an amended complaint adding a demand for punitive damages.  Instead, nine months *after* that deadline had passed – and only nineteen days before the deadline for completing discovery (ECF No. 36) – Appellant filed a motion seeking leave to amend his complaint to add a demand for punitive damages (ECF No. 67).

The district court denied that motion because the deadline for amending pleadings had passed and Appellant failed to show good cause why the deadline should be modified (ECF No. 70).  However, the district court referred to the magistrate judge the issue of whether punitive damages had been demanded in the third amended complaint.  After ordering additional briefing and holding a hearing, the magistrate judge ruled that the third amended complaint did not demand punitive damages (ECF No. 82).  Appellant did not seek review of the magistrate judge's order.

Instead – and two months after the magistrate judged issued his order, which made it almost one year after the deadline to amend the pleadings had passed – Appellant again sought leave to file a fourth amended complaint in order to add a demand for punitive damages (ECF No. 106).  The district court denied the motion, writing that Appellant was essentially seeking reconsideration of the magistrate judge's order and, in any event, had again failed to show good cause for extending

the deadline for amending the pleadings, as required by Rule 16 of the Federal Rules of Civil Procedure (ECF No. 110).

*The District Court Grants Appellees' Motion For Summary Judgment*

Appellees moved for the entry of summary judgment in their favor, and against Appellant, with respect to each of the six counts of the third amended complaint (ECF Nos. 94 & 95).  Central to the motion for summary judgment was Appellant's admission that he was a public figure for the purposes of the application of the First Amendment to his claims (ECF No. 95-1, p.114, l.14 – p.115, l.4).

The district court granted the motion for summary judgment, finding:

- Voice Media Group was entitled to summary judgment on all counts because it did not publish any of the allegedly defamatory statements, and Appellant did not allege – or come forward with any evidence relating to – any alternative theory of liability;

- Avidor was entitled to summary judgment on Counts I and IV because he did not write or publish any of the allegedly defamatory statements;

- Summary judgment was warranted on Count II because the allegedly defamatory statement underlying that claim was true; and

- Summary judgment was warranted on all counts because Appellant's burden was to establish, by clear and convincing evidence, that Appellees acted with constitutional actual malice, and the record did not contain evidence from which a reasonable jury could make such a finding.

(ECF No. 124).

*The District Court Denies Appellant's Motion For Recusal*

After the district court entered its order granting Appellees' motion for summary judgment – and after Appellant filed his motion for reconsideration of that order – Appellant also filed a motion seeking the recusal of the district judge (ECF No. 139). Appellant argued that recusal was warranted because (1) Appellant's motions for leave to amend the complaint were denied, (2) the district court allegedly took offense at Appellant seeking a writ of mandamus in connection with the amendment of his complaint;[3] (3) the district court "delayed" in issuing its order on Appellees' motion for summary judgment; and (4) the district court included quotes from *Alice in Wonderland* in its order granting Appellees' motion for summary judgment.

After considering 28 U.S.C. §§144 and 455, the district court denied Appellant's motion because, even when accepting all of Appellant's factual assertions as true, Appellant did not identify any extrajudicial source of bias or prejudice (ECF No. 141).

---

[3] This Court denied Appellant's petition for a writ of mandamus by order dated April 3, 2015 (Case No. 15-10546-A) (ECF No. 127).

## Standard of Review

The district court's order granting Appellees' motion for summary judgment is reviewed *de novo*. *See, e.g. Battle v. Board of Regents for Georgia*, 468 F.3d 755, 759 (11th Cir. 2006).

The district court's orders denying Appellant leave to further amend his third amended complaint are reviewed for abuse of discretion. *See, e.g. Hall v. United Insurance Co. of America*, 367 F.3d 1255, 1262 (11th Cir. 2004).

The district court's order denying Appellant's motion for recusal is reviewed for abuse of discretion. *See, e.g. Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000).

## SUMMARY OF THE ARGUMENT

The district court entered summary judgment in favor of Voice Media Group on each count of the third amended complaint because the undisputed evidence showed that Voice Media Group did not publish any of the statements at issue. The district court also rejected Appellant's argument regarding "piercing the corporate veil" because that theory of liability was not pleaded in the third amended complaint and, in any event, Appellant did not identify any evidence supporting the theory. Appellant's brief does not address these rulings, which means Appellant has waived any contention that the district court erred in this regard.

16

The district court entered summary judgment in favor of Avidor on Counts I and IV because the undisputed evidence established that he did not write or publish any of the statements at issue.  The district court also rejected Appellant's argument that Avidor should nonetheless be liable because it was "reasonably foreseeable" that Rupar would republish defamatory statements if Avidor sent him a link to the Ohio appellate court's opinion.  Appellant's brief does not address these rulings, which means Appellant has waived any contention that the district court erred in this regard.

The district court entered summary judgment in favor of Hendley, Phoenix New Times, and Voice Media Group on Count II of the third amended complaint because the statement underlying the claim was true, and true statements cannot support a claim for defamation.  Appellant's brief does not address this ruling, which means Appellant has waived any contention that the district court erred in this regard.

Appellant admitted that he was a public figure for the purposes of the application of the First Amendment to his claims.  Public figures are required to prove, by clear and convincing evidence, that the allegedly defamatory statements were published with constitutional actual malice.  The district court entered summary judgment in favor of all Appellees on all counts of the third amended

complaint because the record would not permit a reasonable jury to find that Appellees published the statements at issue with constitutional actual malice.

Appellant does not address the decisions discussing how constitutional actual malice is applied at the summary judgment stage to a public figure's claims for defamation and defamation by implication. Nonetheless, he argues that the district court erred in granting summary judgment. His arguments consist mostly of attacking the district court's discussion of the "evidence" he offered in support of his position, but each argument fails as a matter of law and undisputed fact. Indeed, his arguments have been flatly rejected by every court to have considered them.

The district court did not abuse its discretion in denying Appellant's untimely motions to amend his third amended complaint to assert a claim for punitive damages. Rule 16 of the Federal Rules of Civil Procedure governed Appellant's motions because they were filed after the district court's deadline for amending the pleadings. The district court denied the motions because Appellant did not establish the "good cause" required by Rule 16. Appellant primarily argues that §768.72, Florida Statutes, authorized him to seek leave to amend at the times he did, but his reliance upon that statute is misplaced because this Court has held that it does not apply in federal court.

The district court did not abuse its discretion in denying Appellant's motion to recuse the district judge. Appellant asserted various facts in support of his motion

18

and, even when accepted as true, those facts would not lead a reasonable person to believe that the district judge bore any extrajudicial bias or prejudice towards Appellant.  In the absence of an extrajudicial source, recusal would be warranted only if the district judge's orders demonstrated pervasive bias and prejudice against Appellant, but the district judge's orders did not do that.

This Court should affirm the district court's order granting Appellees' motion for summary judgment, and the orders denying Appellant's motions for leave to amend and for recusal.

## ARGUMENT

## I.  THE DISTRICT COURT WAS CORRECT IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT.

The district court granted Appellees' motion for summary judgment for four reasons: (1) Voice Media Group did not publish any of the allegedly defamatory statements, and Appellant did not allege – or come forward with any evidence relating to – any alternative theory of liability; (2) Avidor did not write or publish any of the allegedly defamatory statements upon which Appellant was suing; (3) the allegedly defamatory statement underlying Count II was true; and (4) the record did not contain clear and convincing evidence from which a reasonable jury could find that Appellees published the statements at issue with constitutional actual malice. The district court was correct on all four reasons.

**A.**    **Voice Media Group Was Entitled To Summary Judgment In Its Favor Because It Did Not Publish Any Of The Allegedly Defamatory Statements Upon Which Appellant Was Suing.**

Voice Media Group was named as a defendant in each count of the third amended complaint (ECF No. 52). The district court ruled that Voice Media Group was entitled to the entry of summary judgment in its favor because it did not publish any of the statements upon which Appellant was suing (ECF No. 124, pp. 13-16). The district court also addressed Appellant's argument, made in response to the motion for summary judgment, that Voice Media Group should nonetheless be held liable on a theory of "piercing the corporate veil" (*Id.*). The district court rejected that argument because Appellant had not alleged that theory in the third amended complaint and, in any event, Appellant did not come forward with any evidence supporting the elements necessary to pierce the corporate veil (ECF No. 124, pp. 13-16).

Appellant's brief does not address this part of the district court's order, which means that Appellant has waived any contention that the district court erred in this regard. *See, e.g., Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[E]valuating an issue on the merits that has not been raised in the initial brief would undermine the very adversarial nature of our appellate system."); *Mesa Air Group, Inc. v. Delta Air Lines, Inc.*, 573 F.3d 1124, 1130 n.7 (11th Cir.

2009) (an issue not raised in opening brief is waived); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012) (collecting decisions) (same).[4]

The district court's entry of summary judgment in favor of Voice Media Group should be affirmed.

### B.    Avidor Was Entitled To Summary Judgment In His Favor Because He Did Not Write Or Publish Any Of The Defamatory Statements Upon Which Appellant Was Suing.

Avidor was named as a defendant in Counts I and IV of the third amended complaint (ECF No. 52). Those counts related to the September 28 Statement, which was written by Rupar and published on the *City Pages* website (ECF No. 52-1). The district court entered summary judgment in favor of Avidor on those counts because it was undisputed that Avidor did not write or publish that statement (ECF No. 124, p. 17). The district court also rejected Appellant's argument that Avidor was nonetheless liable because, by sending Rupar a link to the Ohio appellate court's order, it was "reasonably foreseeable" that Rupar would "republish the defamatory statements" (*Id.* at pp. 17-18).

Appellant's brief does not address this part of the district court's order, which means that Appellant has waived any contention that the district court erred in this

---

[4] Appellant cannot remedy or otherwise undo this waiver by using his reply brief to address this part of the district court's ruling. *See United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court.").

regard.  *See, e.g., Access Now*, 385 F.3d at 1330; *Mesa Air Group*, 573 F.3d at 1130 n.7; *T-Mobile*, 691 F.3d at 1306.  The district court's entry of summary judgment in favor of Avidor should be affirmed.

**C.    The Entry Of Summary Judgment on Count II Was Warranted Because The Underlying Statement Was True.**

Count II was a claim for defamation against Hendley, Phoenix New Times, and Voice Media Group arising from the February 22 Statement (ECF No. 52).  The district court ruled that those Appellees were entitled to the entry of summary judgment in their favor on that claim because the February 22 Statement was true, which meant it could not support a claim for defamation because the tort requires a false statement of fact (ECF No. 124, pp. 18, 20-22).

Appellant's brief does not address this part of the district court's order, which means that Appellant has waived any contention that the district court erred in this regard.  *See, e.g., Access Now*, 385 F.3d at 1330; *Mesa Air Group*, 573 F.3d at 1130 n.7; *T-Mobile*, 691 F.3d at 1306.  The district court's entry of summary judgment in favor of Appellees on Count II should be affirmed.

**D.    Appellees Were Entitled To Summary Judgment On All Counts Because There Was Nothing In The Record From Which A Jury Could Find Clear And Convincing Evidence Of Constitutional Actual Malice.**

The district court entered summary judgment in favor of Appellees on all counts because, based on the record evidence, "[t]he Court finds, as a matter of law,

that no jury could find by clear and convincing evidence the existence of actual malice in the publication of any of the statements in question" and "because the proof presented to show actual malice lacks the convincing clarity which the [C]onstitution demands" (ECF No. 124, pp. 26, 31).  The district court was correct.

## 1.    Constitutional Actual Malice And Its Application At The Summary Judgment Stage.

Appellant admitted that he was a public figure for the purposes of the application of the First Amendment to his claims (ECF No. 95-1, p.114, l.14 – p.115, l.4).  Public figures suing for defamation and defamation by implication are required to prove – by clear and convincing evidence – that the statements at issue were published with constitutional actual malice, which is a *subjective* standard requiring the defendant to have published the statements with actual knowledge of their falsity or with reckless disregard of the truth.  *See, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342-43 (1974); *Mile Marker, Inc. v. Petersen Publishing, LLC*, 811 So.2d 841, 845 (Fla. 4th DCA 2002); *Zorc v. Jordan*, 765 So.2d 768, 771 (Fla. 4th DCA 2000); *Palm Beach Newspapers, Inc. v. Early*, 334 So.2d 50, 51-52 (Fla. 4th DCA 1976); *Garrison v. State of Louisiana*, 379 U.S. 64, 73 (1964) ("utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth"); *Rapp v. Jews for Jesus, Inc.*, 997 So.2d 1098, 1108, 1111 (Fla. 2008) ("actual malice standard" applies to defamation by implication "suits by public figures against publishers").

"'The test of actual malice . . . focuses on the defendant's state of mind *at the time of publication*.'"  *See Hunt v. Liberty Lobby*, 720 F.2d 631, 647 (11th Cir. 1983) (quoting *Long v. Arcell*, 618 F.2d 1145 (5th Cir. 1980)) (emphasis added); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 261-62, 286 (1964) ("The [defendant's] statement does not indicate malice at the time of publication . . . .")*; Danwala v. Houston Lighting & Power Co.*, 14 F.3d 251, 255 (5th Cir. 1993) ("The focus is on Wellborn's state of mind at the time of publication.").

The Supreme Court has made clear that the requirement that constitutional actual malice be proven by clear and convincing evidence applies at the summary judgment stage:

> Just as the "convincing clarity" requirement is relevant in ruling on a motion for directed verdict, it is relevant in ruling on a motion for summary judgment.  When determining if a genuine factual issue as to actual malice exists in a libel suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under [*New York Times*, 376 U.S. at 279-80, 585-86].  For example, there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence.
>
> *       *       *
>
> Consequently, where the *New York Times* "clear and convincing" evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant.  Thus, where the factual dispute concerns actual

24

malice, clearly a material issue in a *New York Times* case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.

\*      \*      \*

In sum, a court ruling on a motion for summary judgment must be guided by the *New York Times* "clear and convincing" evidentiary standard in determining whether a genuine issue of actual malice exists—that is, whether the evidence presented is such that a reasonable jury might find that actual malice has been shown with convincing clarity.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 255-56, 257 (1986).

### 2.     The Structure Of The District Court's Discussion Of Constitutional Actual Malice.

The district court began its discussion of this issue by explaining what constitutional actual malice means, and that Appellant – who admitted he was a public figure – was required to prove constitutional actual malice by clear and convincing evidence (ECF No. 124, pp. 22-23). The district court explained the difference between constitutional actual malice and common law malice (which refers to things such as ill will, spite, and animosity), and wrote that although ill will, alone, cannot establish constitutional actual malice, it can do so when combined with other evidence (*Id.*, pp. 23-24). In explaining the difference between those concepts, the district court noted that Appellant's arguments consistently confused constitutional actual malice with common law malice (*Id.*).

After identifying and explaining the applicable law, the district court ruled that based on the factual record before it, no reasonable jury could find by clear and convincing evidence that Appellees published the statements at issue with constitutional actual malice (*Id.*, pp. 26, 31). Then, the district court substantiated its ruling by identifying the "evidence" upon which Appellant was relying to establish constitutional actual malice, and explaining why that evidence did not preclude the entry of summary judgment in favor of Appellees (*Id.*, pp. 26-31). *See Anderson*, 477 U.S. at 254 ("When determining if a genuine factual issue as to actual malice exists in a libel suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under [*New York Times*, 376 U.S. at 279-80, 585-86]. For example, there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence.").

The district court's analysis of the applicable law, and its application of that law to the undisputed facts, was correct.

### 3.    Appellant's Arguments Regarding Constitutional Actual Malice Are Incorrect.

The best place to start the discussion of the arguments in Appellant's brief is with what he says is the correct way to consider and apply constitutional actual malice at the summary judgment stage. Appellant argues – without citation to any

authority – that "[t]he District court erred in determining that Plaintiff-Appellant was required to show clear and convincing evidence of constitutional actual malice at the summary judgment level" (Brief, pp. 28-29).

The district court ruled that the record would not permit a reasonable jury to find by clear and convincing evidence that Appellees published the statements at issue with constitutional actual malice. That is not error. That is how the Supreme Court has ruled that constitutional actual malice is required to be applied at the summary judgment stage to a public figure's claim for defamation. *See Anderson*, 477 U.S. at 254, 255-56, 257.

Appellant goes on to confuse the applicable standard of proof (clear and convincing evidence) with the different types of proof (direct and circumstantial evidence), which results in him arguing that the district court ruled that circumstantial evidence cannot be used to establish constitutional actual malice (Brief, pp. 29-33). The district court did no such thing. Instead, the district court considered *all* of the evidence that Appellant offered in opposition to the motion for summary judgment, and ruled that the evidence did not preclude summary judgment because it was not – in isolation or combination – clear and convincing evidence of constitutional actual malice (ECF No. 124, pp. 26, 31). Again, that is how constitutional actual malice is supposed to be applied at the summary judgment stage

to a public figure's claim for defamation.  *See Anderson*, 477 U.S. at 254, 255-56, 257.

The rest of Appellant's argument relates to his criticism of the district court's discussion and treatment of the evidence upon which Appellant was relying.  The district court grouped that evidence into nine categories (ECF No. 124, pp. 27-31), and Appellant's brief address *only* six of them.  Each of the six categories that Appellant addressed in his brief will be discussed, below, *in the order in which it was addressed by the district court*:

<u>Failure to Retract</u>

Appellant argued below that constitutional actual malice was established because Appellees refused his post-publication demand to retract the articles containing the allegedly defamatory statements. (ECF No. 104, p.18).  The district court, citing *New York Times*, 376 U.S. at 286, ruled that "the fact that Plaintiff alerted Defendants after publication that he believed the statements were false and that he wanted some kind of correction does not help Plaintiff establish actual malice" (ECF No. 124, p. 27).

In his brief, Appellant argues that the "district court erred as a matter of law when it found that [Appellees'] failure to issue a correction was not relevant to the issue of constitutional malice" (Brief, p. 37).  Putting aside the fact that that is not what the district court ruled, Appellant does not explain how the district court's

actual ruling (quoted above) was error in light of the former Fifth Circuit's holding that "[t]he Supreme Court specifically held that 'failure to retract . . . is . . . not adequate evidence of malice for constitutional purposes . . .' and expressed doubt 'whether, or not a failure to retract may ever constitute such evidence . . .'" *See New York Times Co. v. Connor*, 365 F.2d 567, 577 (5th Cir. 1966) (quoting *New York Times,* 376 U.S. at 286 (1964)) (internal ellipses in original).

Instead of addressing that controlling authority, Appellant cites non-binding and non-controlling authority that – at best – provides that there are "certain circumstances" in which a refusal to retract a statement "might be relevant" to a showing of recklessness (Brief, pp. 37-38).  Appellant does not cite his brief and, more importantly, did not cite below, any evidence identifying any "certain circumstances" existing here that would convert Appellees' decision not to retract into evidence of constitutional actual malice.  In the absence of such evidence – and an explanation of how that evidence relates to Appellees' subjective knowledge at the time the statements at issue were published – the district court was correct in ruling that the failure to retract "does not help [Appellant] establish actual malice."

"Editorial Process"

Appellant argued below that constitutional actual malice existed because he believes Appellees' editing processes are nonexistent or lacking, and because Appellees have no "ombudsman" and do not attend or offer seminars on journalism

29

ethics (ECF No. 104, pp. 18-19). The district court ruled that this was not evidence of constitutional actual malice because Appellant "fail[ed] to explain how this shows in any way that Defendants published the statements in question with knowledge that they were false or with reckless disregard for whether they were false or not" (ECF No. 124, p. 27).

In his brief, Appellant argues that "[t]he District Court further erred in finding that evidence of the editorial process was not relevant to the showing of constitutional malice" (Brief, pp. 33-36). The district court did not rule that evidence of a publisher's editorial process is irrelevant to the issue of constitutional actual malice. Instead, the district court ruled that Appellant's "evidence" did not help him establish constitutional actual malice because he did not explain how it related to Appellees' knowledge of the specific statements' alleged falsity at the time the statements were published.

That a public figure must tie or link (a) the facts upon which he or she is relying to (b) the publisher's knowledge of the relevant statements' alleged falsity, should not surprise Appellant because one of the decisions he cites at page 37 of his brief recognizes that very principle. *See Tavoulareas v. Piro*, 817 F.2d 762, 794 (D.C. Cir. 1987) ("But defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement.") (emphasis in original).

Appellant also ignores that his arguments about the journalism standards he thinks newspapers should have – and his belief that Appellees did not meet those standards – are irrelevant because "[a]ctual malice requires more than a departure from reasonable standards of journalism; '[t]here must be sufficient evidence to permit the conclusion that the defendant *in fact* entertained serious doubts about the truth of his publication.'" *See Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1239 (11th Cir. 1999) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)) (emphasis added); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 162-63 (1967) (Warren, C.J. concurring in result)[5] (expressly rejecting argument that a departure from journalism standards can substitute for constitutional actual malice). None of Appellant's contentions regarding Appellees' "editorial process" showed that Appellees knew that the specific statements upon which Appellant is suing were false, or that Appellees in fact entertained serious doubts about the truth of those specific statements.

Hendley's Personal History

Appellant argued below that Hendley's prior criminal convictions and past drug use was evidence of constitutional actual malice (ECF No. 104, pp. 19-20). The district court ruled that Hendley's personal history did not help Appellant

---

[5] Parts I and II of Chief Justice Warren's concurring opinion were joined by four other Justices, thus making those parts the majority position. *See Butts*, 388 U.S. at 170 & 173; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 336 n.7 (1974).

establish constitutional actual malice because "nothing about these facts show that [Appellees] knew the statements at issue were false or that they entertained serious doubts about the truth of those statements" (ECF No. 124, p.28).

Appellant appears to reference this ruling in his discussion of Appellees' editorial process, where he argues: "Importantly, [Appellees] hired 'reporters' who were drug users and ***actual*** convicted criminals; persons who had nothing to lose to (sic) take risks and defame others to earn a living, as they were of questionable employability" (Brief, p. 34) (emphasis in original).  This argument fails because Appellant does not – and cannot – explain how Hendley's prior convictions and past drug use relate to Appellees' subjective belief about the truth of the statements at issue at the time the statements were published.

### Not Contacting Appellant Prior To Publication

Appellant argued below that "[i]t is more than telling that Defendants, like Rupar, never contacted or called Plaintiff to comment, or to learn the underlying facts of the false allegations before they defamed him maliciously" (ECF No. 104). The district court ruled that "this fact at most presents very minimal evidence of actual malice" because even if not contacting Appellant prior to publication was a breach of "relevant journalistic standards or practices (and the Court is not making any determination about this), the Supreme Court has made clear that even an

extreme departure from professional standards, without more, will not support a finding of actual malice" (ECF No. 124, p. 28).

In his brief, Appellant notes that neither Hendley nor Rupar contacted him prior to publication, and he says "[t]hese were not the actions of honest reporters who were seeking to find the truth in writing articles about Plaintiff-Appellant" (Brief, p. 36). Appellant, however, does not cite any decisions supporting his position that the district court's ruling was incorrect, and he does not mention, much less address, any of the decisions the district court cited in connection with its ruling.

He also does not address any of the decisions that, as cited in the motion for summary judgment, hold that a "plaintiff cannot prove actual malice merely by asserting that a publisher failed to contact the subject of his work." *See Davis v. Costa-Gavras*, 654 F.Supp. 653, 657 (S.D.N.Y. 1987); *see also McFarlane v. Sheridan Square Press*, 91 F.3d 1501, 1510 (D.C. Cir. 1996) ("Schaap's failure to contact McFarlane himself about the allegations provides even less support for a finding of actual malice."); *Secord v. Cockburn*, 747 F.Supp. 779, 789 n.8 (D.D.C. 1990) ("The plaintiff has cited this Court to no case law providing that an author must clear her statements with the subject of the book.").

### Rupar's Writing Of The September 28 Statement

Rupar wrote the September 28 Statement, which said: "Turns out, gays aren't the only ones capable of disturbing, criminal sexual behavior -- apparently even

conservative straight guys tight with Bradlee Dean can turn out to be total creeps."

Appellant alleged that statement was false because it says he committed and was convicted of a crime (ECF No. 52, ¶26).  In moving for summary judgment (and putting aside the fact that the statement did not say Appellant committed and was convicted of a crime), Appellees showed that there was not, and could be no, clear and convincing evidence of constitutional actual malice because:

- Rupar relied upon his review and understanding of the Ohio appellate court's opinion in writing the September 28 Article and the September 28 Statement (ECF No. 95-10, p.61, l.25 – p.62, l.16).

- Rupar used the word "criminal" because he understood the conduct described in the appellate court's opinion – an adult "inappropriately touch[ing]" children – to be criminal behavior (ECF No. 95-10, p.74, l.20 – p.76, l.20; p.78, l.4 – p.82, l.5).

- Rupar believed that statement was true at the time he wrote and published it (ECF No. 95-11, ¶6); and

- As stated in the appellate court's opinion, and as quoted in the September 28 Article, when Appellant was given the opportunity during the Ohio proceedings to deny that he inappropriately touched his children, he invoked his Fifth Amendment rights, which means he believed testimony about the touching could *incriminate* him, and the magistrate said the invocation of his Fifth Amendment rights permitted the drawing of an adverse inference (ECF No. 95-6, ¶26; ECF No. 52-1).

In his response to the motion for summary judgment, Appellant did not – and could not – controvert that evidence, so he instead argued that "malice" could nonetheless be inferred from the tone and substance of Appellees' publications (ECF No. 104, pp.22-23).

In addressing this issue, and after noting that "a party cannot automatically insure a favorable verdict by testifying that he published with a belief that the statements were true," the district court ruled that

> because there is such a lack of other evidence, the Court finds that the language in the title and text of the September 28 Article, along with the minimal evidence discussed above, still fails to establish that a genuine issue of material facts exists which would allow a jury to find by clear and convincing evidence the existence of actual malice sufficient to establish Plaintiff's claims on the September 28 Article. (ECF No. 124, p. 30) (internal quotation marks omitted).

Appellant does not address or challenge this ruling in his brief. Instead, he offers what appear to be inconsistent arguments: (a) "[a]ny person, let alone a reporter, would have "realized that further investigation into the family court's record, including the magistrate's decision that was at issue in this appeal, was proper," and (b) Appellees "reviewed this information [the court record] and still went on to make false and defamatory statement about Plaintiff-Appellant . . . ." (Brief, pp. 25-28).

These arguments fail at the threshold because Appellant did not make them below and, thus, cannot raise them now, for the first time, on appeal. *See, e.g., In re: Club Associates*, 956 F.2d 1065, 1070 (11th Cir. 1992) ("As a general rule, appellate courts will not consider an issue that is raised for the first time on appeal."); *Access Now*, 385 F.3d at 1331 (11th Cir. 2004) (same) (collecting decisions). Regardless, even if Appellant could raise these arguments now, they would still fail.

35

With respect to a supposed failure to investigate, the September 28 Article reported the fact that an appellate court in Ohio wrote that "we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children." Not surprisingly, Appellant does not identify what further investigation would need to be done – apart from reading the appellate court's opinion – in order to report what the appellate court wrote in its opinion.

Additionally, "mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth." *See Gertz*, 418 U.S. at 332. The district court made clear throughout its discussion of constitutional actual malice that the record here did not contain the something "more" that would permit a reasonable jury to find by clear and convincing evidence that Appellees acted with constitutional actual malice.

With respect to Appellant's argument that Appellees "reviewed this information [the court record] and still went on to make false and defamatory statement about Plaintiff-Appellant," Appellees offered uncontroverted evidence (set out in the bullet points above) that identified what Rupar reviewed, stated his belief that what he wrote was true, and explained why he thought it was true. In light of that uncontroverted evidence, Appellant does not and cannot explain how a reasonable jury could find, on this record, clear and convincing evidence that

36

Appellees published the September 28 Statement with knowledge of its alleged falsity.

### Hendley's Writing Of The June 18 Statement

Hendley wrote the June 18 Statement, which said: "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work" (ECF No. 52-3). Appellant alleged that this statement was false because the ethics violation for which he actually was reprimanded was his violation of the settlement agreement resolving the client's claim that Appellant took her money without doing any work (ECF No. 52, ¶¶14-19, 38).

In moving for summary judgment, Appellees did not dispute that the June 18 Statement incorrectly reported the actual reason for Appellant's reprimand. However, Appellees came forward with the following undisputed evidence showing that the statement was not published with knowledge of the statement's error, or with reckless disregard for the statement's truth:

- In writing the June 18 Statement, Hendley reviewed an article that was published in November 2011 (two years earlier) in the *Miami New Times* newspaper, which reported the Florida Bar proceedings and said: "The Florida Bar has issued a public reprimand of Klayman for taking a $25,000 payment to represent a woman in a high-profile criminal case and then allegedly failing to, y'know, do any lawyerin'." (ECF No. 95-13, p.72, ll.6-23, p.75, l.2 – p.76, l.1, p.114, l.11 – p.115, l.17; ECF No. 95-15).

- The *Miami New Times* article had been read by Appellant around the time it was published and Appellant had not claimed it was false (ECF No. 95-1, p.89, l.24 – p.91, l.20);

- Hendley included in the June 18 Article a link to the *Miami New Times* article (ECF No. 95-14, ¶10).

- Hendley reviewed the filings in the Florida Bar proceedings, which were accessible through a link in the *Miami New Times* article (ECF No. 95-13, p.72, l.6 – p.73, l.7, p.75, l.2 – p.76, l.1, p.83, l.3 – p.84, l.6). Those Florida Bar filings were the Formal Complaint, Consent Judgment, Report of Referee, and Supreme Court Order (ECF Nos. 95-16, 95-17, 95-8, 95-9);

- The June 18 Statement was a summary of what Hendley drew from the Florida Bar documents and *Miami New Times* article; Hendley did not intentionally mischaracterize the Florida Bar documents, and he believed the statement was true at the time he wrote and published it (ECF No. 95-13, p. 78, l.15 – p.79, l.7, p.110, ll.1-22; ECF No. 95-14, ¶¶7-12).

Appellees also cited decisions holding that a mistake in reporting is not clear and convincing evidence of actual malice. *See, e.g., New York Times*, 376 U.S. at 271-72 ("[E]rroneous statement is inevitable in free debate . . . and must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive.'") (citation omitted); *Marcone v. Penthouse International Magazine for Men*, 754 F.2d 1072, 1090 (3d Cir. 1985) ("The mistake regarding Marcone might be called unprofessional, even negligent, but it cannot be said to rise to the level of actual malice.").

In addressing this issue, the district court ruled:

38

Lastly, as to the June 18 Article, there is some evidence to support a finding of actual malice. Defendants appear to concede the statement in the June 18 Article is false (Doc. No. 94 at p. 15); indeed, the statement – "Klayman's been in trouble with a Bar association before, as he was publicly reprimanded by the Florida Bar in 2011 for taking money from a client, and never doing any work" – is not entirely accurate. In actuality, the Florida Supreme Court reprimanded Plaintiff for violating the terms of the settlement agreement Plaintiff made in resolving his former client's complaint against him that Plaintiff had "failed to provide services in her criminal case after she paid him a $25,000 retainer."

Hendley stated that he reviewed the public filings related to the Florida Bar disciplinary proceedings. (Hendley dep. At pp. 5-6). Hendley further testified that the statement in the June 18 Article is a summary of what he drew from the Florida Bar documents and the Miami New Times article. (*Id.* at pp. 9-10, 17). Hendley declares that he believed this statement was true at the time he published it (Hendley Decl. at ¶ 12). Again, while Hendley's declaration of truth is not sufficient to automatically insure a favorable verdict, the Court finds Hendley's actions (while likely negligent), when also considering the minimal evidence discussed above, still fails to establish sufficient evidence to meet the clear and convincing standard as to Plaintiff's claims on the June 18 Article.

(ECF No. 124, pp. 30-31).

In his brief, Appellant argues that constitutional actual malice was established because Hendley read the filings in the Florida Bar proceedings and nonetheless published a statement that erroneously identified the reason for Appellant's reprimand by the Florida Supreme Court (Brief, pp. 22-25). Appellant, however, does not cite any decisions holding that an error in reporting is clear and convincing evidence of constitutional malice and he conveniently ignores all of the record

39

evidence that was before the district court, except for the error in the June 18 Statement.

Although Appellant is free to ignore whatever law and evidence he does not like, the district court had to consider the entire record placed before it, which consisted not only of a published statement containing a factual error – which is the only thing that Appellant addresses – but also the journalist's explanation for why he wrote what he did; his belief that what he wrote was correct; his review and reliance on a prior newspaper article containing a substantively identical statement, of which Appellant was aware and did not complain; and his review of a Florida Bar file relating to disciplinary proceedings that started and stopped numerous times, with the underlying unethical conduct that was being investigated by the Bar changing over the course of the proceedings.

On the basis of *all* of the undisputed facts contained in the entirety of record, and upon applying the relevant law, the district court found that although there was "some evidence to support a finding of actual malice," and although Hendley's actions were "likely negligent," the record did not permit a reasonable jury to find, by clear and convincing evidence, that Appellees published the June 18 Statement with constitutional actual malice. Although Appellant clearly disagrees with the district court's ruling, he does not and cannot cite any authority supporting his position that the district court erred.

The district court's entry of summary judgment in favor of Appellees on all counts should be affirmed.

### 4.    Appellant's Argument That A Jury Might Not Believe Appellees Does Not Preclude Summary Judgment.

Appellant argues that it was error for the district court to grant Appellees' motion for summary judgment because a jury might not have believed Appellees' testimony and evidence regarding their belief in the truth of what they wrote and published (Brief, pp. 41-42).  This argument fails because it has been expressly rejected by the Supreme Court.  *See Gertz*, 477 U.S. at 256-57 (rejecting argument that "the defendant should seldom if ever be granted summary judgment where his state of mind it at issue and the jury might disbelieve him or his witnesses as to this issue").  The district court's entry of summary judgment in favor of Appellees on all counts should be affirmed.

### 5.    Appellant Has Waived Any Argument Regarding The Counts For Defamation By Implication.

Counts, II, IV, and VI of the third amended complaint contained claims for defamation by implication under Florida law (ECF No. 52).  Under Florida law, public figures asserting claims against publishers for defamation by implication must establish, by clear and convincing evidence, that the publisher acted with constitutional actual malice.  *See Jews for Jesus*, 997 So.2d at 1108, 1111 (identifying the "'actual malice' standard [applicable] to suits by public figures

41

against publishers" as one "of the protections of defamation law" that applies to claims for defamation by implication).

In their motion for summary judgment, Appellees explained why summary judgment should be entered in their favor on the claims for defamation by implication (ECF No. 94, pp. 10-17). Appellant chose not to address those arguments in his response to the motion (ECF No. 104) and, in its order granting the motion for summary judgment, the district court wrote:

> Finally, even though Defendants argued that Plaintiff could not show actual malice as to the defamation by implication claims (Doc. No 94 at pp. 10-17), Plaintiff failed to directly address these arguments in his response. *See Rapp*, 997 So.2d at 1108 ("All of the protections of defamation law that are afforded to the media and private defendants are [] extended to the tort of defamation by implication." *Id.* at 1108 (alteration added; citation and footnote omitted)). For the above reasons, the Court also finds a reasonable jury could not make a finding of actual malice by convincing clarity as to those claims. (ECF No. 124 p.31).

Now, in his brief, Appellant argues that he "presented more than enough for a finding of defamation by implication" and that "[t]his is a clear-cut case of defamation by implication" (Brief, pp.38-41). By not addressing these issues below, however, Appellant is precluded from addressing them now, for the first time, on appeal. *See, e.g., Club Associates*, 956 F.2d at 1070; *Access Now*, 385 F.3d at 1331 (11th Cir. 2004) (collecting decisions). The district court's entry of summary judgment in favor of Appellees on Counts II, IV, and VI should be affirmed.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING APPELLANT'S UNTIMELY MOTIONS TO AMEND HIS THIRD AMENDED COMPLAINT TO ADD A CLAIM FOR PUNITIVE DAMAGES.

Appellant twice moved for leave to amend his third amended complaint, and the district court denied each motion because Appellant's motions were untimely and he did not establish "good cause" for the relief he sought. Denying those motions was not an abuse of the district court's discretion. Additionally, and independently, the issue of whether Appellant should have been granted leave to amend to demand punitive damages is moot because there is no clear and convincing evidence of constitutional actual malice.

### A. Appellant Did Not Establish Good Cause Under Rule 16.

Appellant filed four complaints in this action; the initial complaint and three amended complaints (ECF Nos. 1, 14, 39, 52). Each pleading contained the following statement: "At a later time (sic) appropriate time, a prayer for punitive damages will also be plead."

The district court's scheduling order set December 12, 2013 as the deadline for amending the pleadings (ECF No. 36). On September 3, 2014 – which was nine months *after* the deadline for amending the pleadings, and only nineteen days before the deadline for completing all discovery – Appellant filed a motion seeking leave to file a fourth amended complaint that, if granted, would have added a claim for

punitive damages (ECF No. 67).  The district court denied the motion because Appellant had not established "good cause" for the relief he sought (ECF No. 70).[6]

Appellant filed another motion seeking the same relief on November 20, 2014 (ECF No. 106).  This motion was filed *eleven months after* the deadline to amend the pleadings, *two months after* the close of discovery, and *one month after* Appellees filed their motion for summary judgment.  The district court denied this motion, too, because Appellant had not shown the good cause required by Rule 16(b) of the Federal Rules of Civil Procedure (ECF No. 110).  In making this determination, the district court cited *Smith v. School Board of Orange County*, 487 F.3d 1361, 1366-67 (11th Cir. 2007), in which a district court's order denying a motion to amend due to a lack of good cause was affirmed where the motion was filed more than one year after the deadline for amending the pleadings and one month after the defendant filed its motion for summary judgment.

In his brief, Appellant first argues that the district court abused its discretion in denying his motions for leave to amend because the issue of punitive damages is governed by §768.72, Florida Statutes, and the statute required that he be granted leave to amend (Brief, pp. 49-51).  As support for this argument, Appellant writes

---

[6] The district court's order also referred to the magistrate judge the issue of whether the third amended complaint, as pleaded, contained a claim for punitive.  The magistrate judge ruled that it did not (ECF No. 82).  Appellant did not appeal the magistrate judge's determination to the district court.

that a district court ruled in 1997 that §768.72 is substantive and thus applies where subject matter jurisdiction is premised upon diversity of citizenship (Brief, pp. 49-50). *See Neill v. Gulf Stream Coach, Inc.*, 966 F.Supp. 1149 (M.D. Fla. 1997). Appellant's argument, and his reliance upon that district court order, is misplaced because this Court has held that §768.72 does not apply in federal court. *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000).

Next, Appellant notes that Rule 15 of the Federal Rules of Civil Procedure "severely restricts" a district court's discretion and requires leave to amend to be freely given when justice requires (Brief, pp. 51-54). After making that observation, Appellant argues that the district court erred because it applied Rule 16(b)(4) to his motions instead of applying Rule 15 (*Id.*). This argument fails because where, as here, a party seeks leave to amend a complaint after a scheduling order's deadline for amending the pleadings has passed, the party must first proceed under Rule 16(b)(4) and establish "good cause" why the deadline should be modified. *See Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

Last, Appellant argues that if Rule 16 applies, there was good cause for him to amend after the deadline because he was following §768.72 and did not receive the evidence that he thinks supported a claim for punitive damages until the last day of the discovery period (Brief, pp. 55-59). This argument fails for two reasons.

First, and as discussed above, §768.72 does not apply, so Appellant's reliance upon that statute to demonstrate good cause is misplaced.

Second, Rule 16 requires a showing of good cause, and "[t]his good cause standard precludes modification [of the deadline to amend] unless the schedule cannot be met despite the diligence of the party seeking the extension." *See Sosa*, 133 F.3d at 1418 (internal quotation marks omitted). "'If [a] party was not diligent, the [good cause] inquiry should end.'" *See id.* (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)) (brackets in original).

So, while Appellant complains that he did not receive documentary evidence supporting punitive damages until the "very last day of discovery," he fails to mention that was because he waited until the thirtieth day before the end of discovery to serve his first request for the production of documents. *See* Fed.R.Civ.P. 34(b)(2)(A) (giving parties thirty days to respond to a request for the production of documents). Indeed, that lack of diligence is why the district court ruled that he had failed to show good cause: "Of course, Plaintiff does not even reference Rule 16(b) or address his lack of diligence in any way . . . . On many occasions now, the Court has admonished Plaintiff that most of his present troubles stem from his failure to timely pursue discovery in this case. *See* (Doc. Nos. 66, 82, 86, 107)." (ECF No. 110, p.4 & n.2).

The district court did not abuse its discretion in denying Appellant leave to amend his third amended complaint to assert a claim for punitive damages.

**B.      The Issue Of Punitive Damages Is Moot Because There Is No Clear And Convincing Evidence Of Constitutional Actual Malice.**

Appellant sought to amend his third amended complaint to assert a claim for punitive damages.  A plaintiff suing for defamation cannot recover punitive damages unless he or she establishes that the statements at issue were published with constitutional actual malice.  *See Gertz*, 418 U.S. at 349 ("For the reasons stated below, we hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.").

As addressed in detail above, the record here would not permit a reasonable jury to find, by clear and convincing evidence, that the statements at issue were published with constitutional actual malice.  The district court's order granting Appellees' motion for summary judgment noted the effect that the lack of such evidence had on the issue of punitive damages.  Specifically, the district court wrote that its ruling on the issue of constitutional actual malice "should moot any of Plaintiff's arguments about punitive damages" (ECF No. 124, p. 31 n.18 (quoting *Straw v. Chase Revel, Inc.*, 813 F.2d 356, 361 (11th Cir. 1987) ("In addition to promulgating the public/private figure distinction, in *Gertz* the Supreme Court held

47

that punitive or presumed damages may not be awarded in a defamation case unless the plaintiff can show that the defendant acted with actual malice.")).

Thus, the issue of whether Appellant should have been given leave to amend to add a claim for punitive damages is moot because the record did not contain clear and convincing evidence of constitutional actual malice, which is an essential element of a claim for punitive damages where the underlying claim is for defamation.

## III.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR RECUSAL.

Appellant filed a motion seeking the recusal of the district judge who was presiding over the action (ECF No. 139).  The motion was filed pursuant to 28 U.S.C. §§144 and 455(a).  Appellant filed the motion more than six weeks after the district court entered its order granting Appellees' motion for summary judgment, and three weeks after he filed his motion seeking reconsideration of that order.

Appellant argued that recusal was warranted because the district court denied his motions seeking leave to further amend his third amended complaint, "delayed" in ruling upon Appellees' motion for summary judgment and, once it ruled on the motion for summary judgment, the order quoted *Alice in Wonderland*, criticized his litigation tactics, and made reference to Appellant having petitioned for a writ of mandamus.

The district court denied the motion, ruling that the facts asserted by Appellant – even if true – would not cause a reasonable person to believe that the district judge bore any extrajudicial bias or prejudice against Appellant (ECF No. 141).    The district court did not abuse its discretion in denying Appellant's motion for recusal.

There can be no dispute regarding the standard governing recusal or disqualification:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree and favoritism or antagonism (as discussed below) when no extrajudicial source is involved.  Almost invariably, they are proper grounds for appeal, not for recusal.  Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree or favoritism or antagonism as to make fair judgment impossible. . . .  *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.  A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

*See Liteky v. United States*, 510 U.S. 540, 555-56 (1994) (emphasis in original) (internal citations omitted); *see also Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1329 (11th Cir. 2002) (quoting *Hamm v. Board of Regents*, 708 F.2d 647, 65 (11th Cir. 1983)) ("'[t]he general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources.' The exception to this rule is 'when a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that is constitutes bias against a party.' Mere 'friction between court and counsel,' however, is not enough to demonstrate 'pervasive bias.'") (internal citations omitted) (brackets in original); *In re: Walker*, 552 F.3d 1304, 1310-11 (11th Cir. 2008) (same); *Christo v. Padgett*, 223 F.3d 1324, 1333-34 (11th Cir. 2000).

Appellant's grounds for recusal were the district court's rulings, which "almost never" constitute a basis for recusal. Appellant did not – and could not – identify any extrajudicial source for the district court's alleged bias or prejudice against him. In the absence of an extrajudicial source, recusal would be warranted only if what the district judge wrote in her orders demonstrated "pervasive bias and prejudice" against Appellant, but nothing in any of the district court's orders did any such thing.

At bottom, Appellant simply was upset that he lost the case. Indeed, prior to having summary judgment entered against him, Appellant was effusive in his praise for the district judge. At his deposition, Appellant "thank[ed] God" not only for the

for the fact that the she was assigned to the case, because she is "a really good judge," but also because she is not among the judges who "wear their biases on their sleeve and do things that harm ordinary folk" (ECF 95-1, p.34, l.22 – p.35, l.12; p.95, 1.13 – p.96, l.18).

The district court did not abuse its discretion in denying Appellant's motion for recusal.

## CONCLUSION

For these reasons, the district court's order granting Appellees' motion for summary judgment, and its orders denying Appellant's motions for leave to amend and for recusal, should be affirmed.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Appellees
701 Brickell Avenue
Suite 3300
Miami, Florida 33131
(305) 374-8500
(305) 789-7799 (facsimile)


By:  /s/  Scott D. Ponce
        Sanford L. Bohrer (FBN 160643)
        Email: sbohrer@hklaw.com
        Scott D. Ponce (FBN 0169528)
        Email: sponce@hklaw.com
        Brian W. Toth (FBN 57708)
        Email: brian.toth@hklaw.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 12,420 words, excluding the parts of the brief excluded by Rule 32(a)(7)(B)(iii) and Eleventh Circuit Rule 32-4.  This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

By:  /s/  Scott D. Ponce

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of November 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System.

By:  /s/  Scott D. Ponce

52